**H.D., Petitioner,**

v.

**PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 6, 2000.
Decided May 15, 2000.

---

Hessley impedes the achievement of these goals.

**1.** 25 P.S. § 961.703(a)(2).

Stewart J. Berger, Philadelphia, for petitioner.

Mary C. Walsh, Philadelphia, for respondent.

Before PELLEGRINI, J., LEADBETTER, J., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

H.D. appeals from an order of the Department of Public Welfare, Bureau of Hearings and Appeals (Bureau) dismissing his appeal as untimely. The issue on appeal is whether H.D. established his entitlement to file an appeal nunc pro tunc to challenge the indicated report of child abuse after expiration of the 45–day time period set forth in Section 6341(a)(2) of the Child Protective Services Law (Law), *as amended,* 23 Pa.C.S. § 6341(a)(2).[1] We reverse.

---

1. Section 6341(a)(2) of the Law provides:

   (2) Any person named as a perpetrator ... in an indicated report of child abuse may, within 45 days of being notified of the status of the report, request the secretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is

The record reveals the following relevant facts. On June 5, 1996, the Northampton County Children and Youth Services (Children Services) issued a report, stating that following its investigation of the oral child abuse report on May 7, 1996, the Children Services determined that H.D.'s sexual abuse of his natural daughter, J.F., which occurred in 1984 when she was 4 years old, should be recorded as "indicated." Upon receiving the indicated report from the Children Services, the Department of Public Welfare (Department), Childline & Abuse Registry sent a notice to H.D. on June 12, 1996 informing him that the indicated report of child abuse, naming him as a perpetrator and J.F. as a victim, had been recorded. In the notice, the Department advised H.D. that he may seek expunction or amendment of the indicated report by filing a written request with the Secretary of Public Welfare within 45 days of the notice.[2] The Department sent the notice by first-class mail to 510 Nazareth Pike, Nazareth, PA 18064.

Allowing five days for mail delivery, the 45-day period for challenging the indicated report expired on July 31, 1996. On January 13, 1998, H.D., through his counsel, filed an appeal from the indicated report and requested a hearing. The Department refused to consider H.D.'s appeal on the basis that it was not filed within 45 days of the June 12, 1996 notice. H.D. then appealed to the Bureau and sought permission to file an appeal nunc pro tunc.

At a hearing held over telephone on August 24, 1999, H.D. testified as follows. The 510 Nazareth Pike address, to which the Department mailed the June 12, 1996 notice of the indicated report, is the home address of H.D.'s parents. On June 12, 1996, H.D. did not reside at that address. From July 1995 until June 1999 when he moved back to his parents' home, H.D.

resided at 3339 Delps Road, Danielsville, PA 18038. H.D. never received the June 12, 1996 notice mailed to his parents' home address. H.D. admitted, however, that he received the previous notice mailed by the Department on February 16, 1996 to his parents' home address. The February 16, 1996 notice informed H.D. that the child abuse report, naming him as a perpetrator and J.F. as a victim, had been destroyed based on the Children Services' determination that the report was "unfounded."

On July 14, 1997, H.D. filed an application for child abuse history clearance with the Department. In a letter dated July 22, 1997, the Department denied H.D.'s application, stating that he had been listed in the Central Registry as an indicated child abuser. The Department mailed the July 22, 1997 letter to the 3339 Delps Road address listed in H.D.'s application. H.D. testified that he first learned of the indicated child abuse report when he received the Department's July 22, 1997 letter. H.D. then hired an attorney who contacted the Department on October 1, 1997, subsequently obtained a copy of the June 12, 1996 notice and filed the appeal on January 13, 1998.

Linda Hummel, the administrative officer in the Childline & Abuse Registry, testified that the June 12, 1996 notice mailed to the 510 Nazareth Pike address was not returned as undeliverable; after mailing the July 22, 1997 letter to the 3339 Delps Road address listed in H.D.'s application, the child abuse clearance unit in the Childline & Abuse Registry forwarded H.D.'s new address to the child abuse processing unit which subsequently changed his address in the record on October 27, 1997 by crossing out the 510 Nazareth Pike address and wrote in the new address in the June 5, 1996 indicated report; and the Department received the letters from

being maintained in a manner inconsistent with this chapter.

**2.** Section 6338(a) of the Law, 23 Pa.C.S. § 6338(a), provides that the Department "shall also inform the recipient [of the indi-

cated report] of his right, within 45 days after being notified of the status of the report, to appeal an indicated report, and his right to a hearing if the request is denied."

H.D.'s attorney in October 1997 and on December 5, 1997, requesting a copy of the June 12, 1996 notice and inquiring about the indicated report.

■ Concluding that H.D. failed to establish his entitlement to an appeal nunc pro tunc, the hearing officer recommended in her adjudication that H.D.'s appeal be dismissed as untimely. The Bureau subsequently adopted the hearing officer's adjudication in its entirety. H.D.'s appeal to this Court followed.[3]

H.D. contends that the record establishes his entitlement to an appeal nunc pro tunc. H.D. asserts that the Department relied on the information given by the accuser and failed to make any effort to verify his current address before mailing the June 12, 1996 notice; the Department "altered" the indicated report after it learned of his correct address in July 1997 by crossing out his parents' address and writing in his correct address therein and failed to send him another notice; and the delay in filing the appeal was caused by the Department's negligence in sending the notice to the wrong address. The Department contends, on the other hand, that H.D. had an obligation to inform the Department of his current address after receiving the previous notice sent to the 510 Nazareth Pike address on February 16, 1996, and that the Department was therefore not negligent in mailing the June 12, 1996 notice to H.D.'s only known address in its record.

■ It is well established that failure to timely appeal an administrative agency's action is a jurisdictional defect; consequently, the time for taking an appeal cannot be extended as a matter of grace or mere indulgence. *Sofronski v. Civil Service Commission, City of Philadelphia*, 695 A.2d 921 (Pa.Cmwlth.1997). An appeal nunc pro tunc may be allowed where

the delay in filing the appeal was caused by extraordinary circumstances involving fraud or some breakdown in the administrative process, or non-negligent circumstances related to the appellant, his or her counsel or a third party. *Cook v. Unemployment Compensation Board of Review*, 543 Pa. 381, 671 A.2d 1130 (1996); *Sofronski.*

■ A party seeking permission to file an appeal nunc pro tunc must also establish that (1) the appeal was filed within a short time after learning of and having an opportunity to address the untimeliness; (2) the elapsed time period is of very short duration; and (3) the appellee will not be prejudiced by the delay. *J.C. v. Department of Public Welfare*, 720 A.2d 193 (Pa.Cmwlth.1998). The question of whether the appellant established entitlement to an appeal nunc pro tunc is a legal conclusion to be drawn from the evidence in the record and is fully reviewable by this Court. *Falcon Oil Co. v. Department of Environmental Resources*, 148 Pa. Cmwlth. 90, 609 A.2d 876 (1992).

■ To support the conclusion that H.D. failed to establish entitlement to an appeal nunc pro tunc, the hearing officer stated in the September 22, 1999 Adjudication:

The appellant testified that he had resided at 3339 Delps Road, Danielsville, 18038 from July 1995 until June 1999. Since June 1999 to present he resides at 510 Nazareth Pike, Nazareth, 18064. He contends that his address was not correct on the ... notification of June 12, 1996, therefore, he did not appeal. The appellant also testified that his Parents reside and have resided at the Nazareth Pike address. *The appellant[']s testimony was dubious due to the fact that he received another notification ...*

---

**3.** This Court's scope of review of the Bureau's decision is limited to determining whether the Bureau's adjudication violates constitutional rights or is not in accordance with the Law, or whether the findings of fact are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *K.S. v. Department of Public Welfare*, 129 Pa.Cmwlth. 31, 564 A.2d 561 (1989).

*dated February 16, 1996 addressed to the same Nazareth Pike address although he contends that he did not reside at that location.* (Emphasis added.)

However, the mere fact that H.D. had received the previous notice mailed to his parents' home address does not establish that he either actually lived at that address on June 12, 1996 or received the notice of the indicated report. The February 16, 1996 notice informed H.D. that the Children Services had determined that the child abuse accusation against him involving the same victim was *unfounded* and that the child abuse report, therefore, had been destroyed. Thus, it was unnecessary for him to take any further action or thereafter notify the Department of his current address. Rather, it was the Department's duty to make a reasonable effort to verify H.D.'s current address before mailing the notice of the indicated report.

Admittedly, the Department did not make any effort to verify H.D.'s current address, resulting in sending the notice to his parents' home address. Contrary to the Department's assertion, the mere fact that the alleged victim is H.D.'s natural daughter, who may have "reliable information of a parent's residence," did not excuse the Department from fulfilling its duty to verify his current address before mailing the notice of the indicated report which accused him of committing a serious act of child abuse. Department's Brief, p. 9.

■ It is well established that negligence on the part of administrative officials is deemed to be the equivalent of fraud for the purpose of determining entitlement to an appeal nunc pro tunc. *Moore v. Pennsylvania Board of Probation & Parole*, 94 Pa.Cmwlth. 527, 503 A.2d 1099 (1986); *Branch v. Workmen's Compensation Appeal Board*, 38 Pa. Cmwlth. 374, 393 A.2d 55 (1978). It has also been held that the administrative officials' failure to properly send a notice constitutes negligence, which amounts to a breakdown in the administrative operation. *Nixon v. Nixon*, 329 Pa. 256, 198 A. 154 (1938); *Moore*. In this matter, H.D. established a proper basis for granting an appeal nunc pro tunc by demonstrating that the officials of the Department were negligent in mailing the notice on June 12, 1996.

Further, the Department does not dispute H.D.'s testimony that after he learned of the indicated report from the Department's July 22, 1997 letter denying his application for child abuse history clearance, he immediately employed an attorney who subsequently contacted the Department and obtained the copy of the notice. In his letter dated March 30, 1998 sent to the Department, H.D.'s attorney stated: "I do note that I wrote to Mr. Scott [Director of the Childline & Abuse Registry] on October 1, 1997 requesting information. My letter was ignored. I had to write again on December 5, 1997, five weeks later, requesting the same information from Mr. Fries." The Department's witness confirmed the Department's receipt of the letters from H.D.'s attorney in October 1997 and on December 5, 1997. The record thus demonstrates that H.D. promptly filed the appeal on January 13, 1998 after obtaining the copy of the notice of the indicated report and investigating the indicated report. Finally, the Department does not argue that it will be prejudiced if an appeal nunc pro tunc is granted. Hence, H.D. established his entitlement to an appeal nunc pro tunc.

Accordingly, the order of the Bureau is reversed. This matter is remanded to the Bureau for a further proceeding on the merits of H.D.'s appeal.

*ORDER*

AND NOW, this 15th day of May, 2000, the order of the Department of Public Welfare, Bureau of Hearings and Appeals (Bureau) in the above-captioned matter is reversed. This matter is remanded to the

Bureau for a further proceeding on the merits of H.D.'s appeal.

Jurisdiction relinquished.

Judge LEADBETTER dissents.